MILLIGAN, RESPONDENT, *v.* CITY OF MILES CITY ET AL.,
APPELLANTS.

(No. 3,742.)

(Submitted November 1, 1915.   Decided November 17, 1915.)

[153 Pac. 276.]

*Cities and Towns—Light and Power Plant—Utilization of Waste
Steam—Injunction—Right of Taxpayer.*

Cities and Towns—Illegal Expenditures—Injunction—Right of Taxpayer.
 1.   In the absence of legislation placing the right to interfere with a
 threatened unlawful expenditure by a municipal corporation in the
 hands of some public officer, any taxpayer may maintain an action for
 that purpose

 [As to injunction against illegal acts of municipal corporations, see
 note in 2 Am. St. Rep. 92.]

Same.
 2.   Under the rule *supra, held* that where a city proposed to extend
 a steam-pipe from the municipal electric power plant so as to enable
 it to sell heat generated by the waste steam to owners of property
 abutting on the streets traversed by the main on its way to one of
 the public buildings heated by the plant, a taxpayer could rightfully
 apply for an injunction to restrain the prosecution of work under con-
 tracts let for materials and labor necessary to effect the extension.

Same—Extent of Powers—Statute.
 3.   The statute is the measure of the powers granted to municipalities,
 whether the particular one in question fall within their legislative or
 governmental, or proprietary or *quasi*-private powers; the inquiry in
 either case being whether there is an express grant or one by neces-
 sary implication, and whether the power is indispensable to the ac-
 complishment of the corporation.

 [As to right of municipal corporation to engage in enterprise gen-
 erally legal .ou as of a private character, see note in 51 L. R. A.
 (n. s.) 1143.]

Same—Power to Install Lighting Plant.
 4.   Under section 3259, Revised Codes, a city has the power to install
 at public expense a lighting plant to supply light not only for its
 public buildings and streets, but also for use by its inhabitants.

Same—Lighting Plant—Utilization of Waste Steam.
 5.   *Held,* that, as the defendant city was authorized to conduct an
 electric light and power plant, it could lay a main to heat a city
 building by the waste steam from the plant, and incidentally furnish
 steam for heat to private buildings abutting on the main, since its
 authorization to conduct a power plant impliedly authorized it to do
 so in the usual manner in which such a business is conducted by private
 persons or corporations, which involves a due utilization of by-products.

*Appeal from District Court, Custer County; Daniel S. O'Hern,
Judge.*

ACTION by M. W. Milligan against the City of Miles City and certain of its officers. From an order denying their motion for dissolution of an injunction *pendente lite,* defendants appeal. Order reversed and cause remanded.

*Messrs. Chas. H. Loud, S. D. McKinnon, C. R. Tisor* and *Geo. W. Farr,* for Appellants, submitted a brief; *Messrs. Loud* and *McKinnon* argued the cause orally.

Has the city the right and authority to utilize its by-product or exhaust steam of its electric light plant in furnishing heat to private consumers, where the city owns and operates its electric light and power plant and also where the cost of installation of the exhaust heating system is paid in cash with funds derived from revenue of the light and power plant, and it appearing that it will not require any additional expense for fuel or employees, at the light plant in the operation of the exhaust steam-heating system, and it further appearing that no injury will be done to the light plant or its efficiency in any wise impaired, and that the moneys paid for the installation of the heating system are taken from the electric light and power fund and not from the general fund, which is supported by general taxation of the inhabitants of the city, and that it will be a paying and profitable undertaking in connection with the operation of the city's electric light plant? We urge that the city in using its by-product of the electric light plant is exercising its business powers, and that the courts will not interfere with the reasonable discretion of the city council in the installation of this exhaust steam-heating system. Our supreme court has recognized the doctrine that a municipality has two classes of powers, to-wit, governmental and business powers. (See *State* v. *City of Great Falls,* 19 Mont. 518, 49 Pac. 15; *City of Henderson* v. *Young,* 119 Ky. 224, 83 S. W. 583; McQuillin on Municipal Corporations, sec. 1801; *Omaha Water Co.* v. *Omaha,* 147 Fed. 1, 77 C. C. A. 267, 8 Ann. Cas. 614, 12 L. R. A. (n. s.) 736.) ''If the corporation engages not only in the business of supplying its own wants

in this respect, but also those of private consumers, it clearly is exercising in such case its business and proprietary powers." (Abbott on Municipal Corporations, sec. 475, citing, *Opinion of the Justices,* 150 Mass. 592, 8 L. R. A. 487, 24 N. E. 1084; *Bullmaster* v. *City of St. Joseph,* 70 Mo. App. 60; *Norwich Gaslight Co.* v. *Norwich City Gas Co.,* 25 Conn. 19; see, also, *Helena Consol. Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382; *Esberg Cigar Co.* v. *City of Portland,* 34 Or. 282, 75 Am. St. Rep. 651, 43 L. R. A. 435, 55 Pac. 961; *Brown* v. *Salt Lake City,* 33 Utah, 222, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004, 14 L. R. A. (n. s.) 619, 93 Pac. 570; *Davoust* v. *City of Alameda,* 149 Cal. 69, 9 Ann. Cas. 847, 5 L. R. A. (n. s.) 536, 84 Pac. 760.) In the case of *City of Crawfordsville* v. *Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 14 L. R. A. 268, 28 N. E. 849, involving the right of a city to sell light to private consumers, the court said: "The corporation, possessing as it does the power to generate and distribute throughout its limits electricity for the lighting of the streets and other public places, we can see no good reason why it may not also at the same time furnish it to the inhabitants to light their residences and places of business." This case has been followed in many cases in which the express power given by the legislature was to light the streets, but the courts held that the city possessed the implied powers to sell to private consumers. (*Jacksonville Electric Light Co.* v. *City of Jacksonville,* 36 Fla. 229, 267, 51 Am. St. Rep. 24, 30 L. R. A. 540, 18 South. 677; *Cary* v. *Blodgett,* 10 Cal. App. 463, 102 Pac. 668; *Overall* v. *Madisonville,* 125 Ky. 684, 690, 12 L. R. A. (n. s.) 433, 102 S. W. 278; *City of Henderson* v. *Young,* 119 Ky. 224, 83 S. W. 583.)

The discretion of municipal corporations within the sphere of their powers is not subject to judicial control, except in case of fraud or gross abuse of discretion. (*Valparaiso* v. *Gardner,* 97 Ind. 1, 49 Am. Rep. 416; 15 Am. & Eng. Ency. of Law, 1096; *City of Crawfordsville* v. *Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 14 L. R. A. 268, 28 N. E. 849.)

The city council, in the use of its exhaust steam, has a right to anticipate the revenue and income to be collected therefrom. (*Sheidley* v. *Lynch,* 95 Mo. 487, 8 S. W. 434; *Lewis* v. *Denver Water Co.,* 38 C. L. J. 178; *Weston* v. *Syracuse,* 17 N. Y. 110; *Book* v. *Earl,* 87 Mo. 246.)ʻ Where a city has the power to establish works for lighting its streets it may, in connection therewith, furnish private consumers such light by contract. (28 Cyc. 639; *Posey* v. *North Birmingham,* 154 Ala. 511, 15 L. R. A. (n. s.) 711, 45 South. 663; *City of Crawfordsville* v. *Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 14 L. R. A. 268, 28 N. E. 849; *Linn* v. *Chambersburg Borough,* 160 Pa. St. 511, 25 L. R. A. 217, 28 Atl. 842; *Pikes Peak Power Co.* v. *Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333.) A city authorized to maintain a dam may lease its surplus water-power. (*Attorney General* v. *City of Eau Claire,* 37 Wis. 400; *Green Bay & M. Canal Co.* v. *Kaukauna Water Power Co.,* 70 Wis. 635, 35 N. W. 529, 36 N. W. 828; *Holton* v. *Camilla,* 134 Ga. 560, 20 Ann. Cas. 199, 31 L. R. A. (n. s.) 116, 68 S. E. 472; *Hequembourg* v. *Dunkirk,* 49 Hun, 550, 2 N. Y. Supp. 447.)

In *City of Ysleta* v. *Babbitt,* 8 Tex. Civ. App. 432, 28 S. W. 702, it was held that a city could maintain irrigation ditches in connection with supplying water and sell water from the ditches for domestic use and for irrigation.

*Mr. Sharpless Walker* and *Mr. W. C. Packer,* for Respondent, submitted a brief; *Mr. Walker* argued the cause orally.

A municipality can exercise no powers excepting those conferred upon it by statute, or those incidental to the powers expressly granted, or those indispensable to the objects of its creation. (*Shapard* v. *City of Missoula,* 49 Mont. 269, 278, 141 Pac. 544; *Helena Light & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 31, 130 Pac. 446; *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 303, 20 Ann. Cas. 239, 106 Pac. 695; *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 527, 13 Pac. 249; *City of Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558, 44 L. Ed. 886, 20 Sup. Ct. Rep. 736; *Hyatt* v. *Williams,* 148 Cal. 585, 84 Pac. 41; *Town of Akron*

v. *McElligott,* 166 Iowa, 297, 147 N. W. 773; *Flannagan* v. *Buxton,* 145 Wis. 81, 32 L. R. A. (n. s.) 391, 129 N. W. 642; *Bear* v. *City of Cedar Rapids,* 147 Iowa, 341, 27 L. R. A. (n. s.) 1150, 126 N. W. 324; *Brooks* v. *Incorporated Town of Brooklyn,* 146 Iowa, 136, 26 L. R. A. (n. s.) 425, 124 N. W. 868; *Winchester* v. *Redmond,* 93 Va. 711, 57 Am. St. Rep. 822, 25 S. E. 1001; *Attorney General* v. *Common Council of Detroit,* 150 Mich. 310, 121 Am. St. Rep. 625, 113 N. W. 1107; *Farwell* v. *City of Seattle,* 43 Wash. 141, 10 Ann. Cas. 130, 86 Pac. 217; *City and County of Denver* v. *Hallett,* 34 Colo. 393, 83 Pac. 1066; Dillon, Municipal Corporations, sec. 89.) If a city engages without authority in a private business, it may be enjoined, and it is immaterial that it is conducting the business at a profit. (*Keen* v. *Mayor etc. of Waycross,* 101 Ga. 588, 29 S. E. 42.) If a city attempts to use a school building erected by it as a theater, such use will be enjoined on a bill filed by a taxpayer and proprietor of a theater. (*Sugar* v. *Monroe,* 108 La. 677, 59 L. R. A. 723, 32 South. 961; *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85, 106 Am. St. Rep. 931, 99 N. W. 603.)

A municipal corporation, being a creature of the state, possesses only such powers as the statute confers upon it, and such inherent powers as are necessary and inseparably incidental to every corporation. (28 Cyc. 258–260.) The powers of a municipality are only those expressly conferred or necessarily implied. (16 Current Law, 1092, and cases cited.) A municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. (See *New Decatur* v. *Berry,* 90 Ala. 432, 24 Am. St. Rep. 827, 7 South. 838; *Keen* v. *Mayor etc. of Waycross,* 101 Ga. 588, 29 S. E. 42; *State* v. *King County,* 45 Wash. 519, 88 Pac. 935; *Town of Petersburg* v. *Mappin,* 14 Ill. 193, 56 Am. Dec. 501.)

In *Opinion of the Justices,* 155 Mass. 598, 15 L. R. A. 809, 30 N. E. 1142, the Massachusetts supreme court rendered an opinion to the state legislature on the question whether the purchase by a city or town of coal and wood as fuel, and the resale thereof to its inhabitants, is a public service which can be authorized by the legislature, and answered the question in the negative.

In *Attorney General* v. *Common Council of Detroit,* 150 Mich. 310, 121 Am. St. Rep. 625, 113 N. W. 1107, the court held that a city has no power to engage in the business of brickmaking without an express grant, when it is not essential or indispensable to the declared objects and purposes of the corporation, and when the needed brick can be purchased in the open market.

In *Attorney General* v. *City of Eau Claire,* 37 Wis. 400, it was held that a statute authorizing a municipality to build a dam for the purpose of letting water-power to manufacturing industries was void.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Since the year 1896 the defendant city had been the owner of a steam electric light and power plant which has capacity sufficient to produce the current necessary to light the public buildings, streets and alleys of the city and to furnish light and power for private use by its inhabitants. The funds necessary to install the plant—$30,000—were derived from a sale of bonds issued by the city. The revenues derived from the sale of current have always been kept separate from the general revenues of the city, in what is designated as the electric light and power fund. Except as noted hereafter, they have been devoted to the maintenance of the plant and the appliances for distribution of the current, to the payment of accruing interest on the bonds, and to the accumulation of a sinking fund for their redemption at maturity. There is now in the fund the sum of $18,000. The power station is situated on Fort Street between Seventh and Eighth Streets, which intersect Main Street to the north at right angles. The city hall is situated on Eighth Street, somewhat less

than a block south of Main Street. During the year 1914, desiring to heat the city hall, and deeming it practicable to accomplish this by making use of the exhaust or waste steam at the plant, the city council caused the installment of a main steam-pipe line from the plant along Eighth Street, with the appliances necessary to divert the steam into the main, and thence into the building. This main, as then installed, extends beyond the city's property north to the middle of Main Street, and is of capacity sufficient to conduct all the steam wasted at the plant. The expense of installment was paid out of the light and power fund. During the following winter season the steam not required to heat the city hall was furnished for private use to persons owning buildings abutting on Eighth Street. At the time this was done it was the intention of the council at some future time, if the initial installment proved effective, to cause the main to be extended east along Main Street to the city library, which occupies a corner at the intersection of Main and Tenth Streets, and also to the west to Fifth Street. By this extension the council proposed to furnish heat to the library building, and incidentally to the owners of business buildings abutting on Main Street at reasonable rates, expecting thus to increase the efficiency of the light and power plant by making the waste steam a source of profit to the city. At a regular meeting of the council held on May 27, 1915, a committee having had the question of extension under consideration, reported the result of its investigations and recommended that the projected extension be made. The report was adopted, and thereafter contracts were regularly let for materials and labor necessary to effect the extension. The contracts contemplate an expenditure of $10,600 out of the light and power fund to be replaced by the revenues derived from the sale of steam. The plaintiff, a resident of the city and a taxpayer, thereupon brought this action to restrain the prosecution of the work under the contracts. Upon the filing of the complaint, and without notice, the court issued an injunction *pendente lite.* The defendants thereafter, upon a showing of facts by affidavits and

oral testimony, moved for a dissolution. The motion having been denied, the defendants have appealed.

The trial judge made no findings of fact. As appears from his memorandum opinion found in the record, he devoted his attention to two questions of law only, regarding the solution of these as determinative of the rights involved, *viz.*, whether the plaintiff may maintain the action, and whether the defendant city has the authority, under any circumstances, to install the proposed improvement. The questions of fact whether the proposed improvement will be practicable, and whether, in view of the amount of expenditure, it will prove profitable, seem to have been wholly lost sight of. Counsel have not discussed these questions in their briefs. On the contrary, though a considerable amount of evidence was introduced at the hearing on the motion to dissolve, counsel have assumed not only that the extension will prove effective, but also that it will be a source of profit. We shall therefore not stop to examine the evidence, but adopt the assumption of the trial court and counsel, and determine only the questions submitted, leaving it to the trial court to determine the questions of fact upon the final hearing on the merits.

1. Counsel for the defendants seriously contend that the [1, 2] appellant cannot maintain this action, for the reason that the proposed expenditure will not affect the taxpayers of the city generally, but only the city in the exercise of its business powers, and the users of electric light and power. We cannot appreciate the distinction counsel endeavor to make between taxpayers of the city, as such, and those taxpayers who use light and power. The light and power plant was installed at the expense of all the taxpayers of the city, the necessary funds having been realized by a sale of its bonds. These are liabilities of the corporation to the discharge of which all the taxpayers must contribute, directly or indirectly. The plant is their property. The revenues derived from the sale of its product belong to them, because, though kept separate from the revenues derived from general taxation, they are part of the public moneys.

The rule is well settled that, in the absence of legislation restricting the right to interfere to some public officer, the courts will, upon the application of one or more of the individual taxpayers, interfere by appropriate process to prevent an unlawful expenditure of public money by the officers of the corporation or the incurring of an obligation which will render such expenditure necessary. There never has been any such restrictive legislation in this jurisdiction, and from an early date in the history of the state the right of the taxpayer to maintain an action to prevent or restrain misuse of corporate power has been recognized and enforced. (*Chumasero* v. *Potts,* 2 Mont. 242; *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249; *Id.,* 8 Mont. 467, 20 Pac. 823; *State* v. *Board of Commissioners, etc.,* 21 Mont. 469, 54 Pac. 939; *Buck* v. *Fitzgerald,* 21 Mont. 482, 54 Pac. 942; *State ex rel. Bean* v. *Lyons,* 37 Mont. 354, 96 Pac. 922; *Carlson* v. *City of Helena,* 39 Mont. 82, 17 Ann. Cas. 1233, 102 Pac. 39; *State ex rel. Stuewe* v. *Hindson,* 44 Mont. 429, 120 Pac. 485.) The conclusion that the plaintiff may maintain the action was therefore correct.

2. The rule of construction applicable to the charter of a municipal corporation or the statute authorizing its creation is stated by Mr. Dillon as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic Act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby or by some legislative Act applicable thereto. All acts beyond the scope of the powers granted are void." (1 Dillon, Mun.

Corp. (5th ed.), sec. 237.)    The rule as thus stated has been approved and applied by this court in many cases.    (*Davenport* v. *Kleinschmidt, supra; State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695; *Helena Light & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446; *Shapard* v. *City of Missoula,* 49 Mont. 269, 141 Pac. 544.)    "The reason for the rule is that it must be presumed that the state has granted in clear and unmistakable terms all that it intended to grant at all."    (*State ex rel. Quintin* v. *Edwards, supra.*)

It is true, as counsel for the defendants argue, that the powers granted to a municipality are to be distinguished into two classes [3] —the first including those which are legislative, public or governmental, and import sovereignty; the second those which are proprietary or *quasi* private, conferred for the private advantage of the inhabitants and of the city itself as a legal person. (*State ex rel. Gt. Falls W. W.* v. *City of Great Falls,* 19 Mont. 518, 49 Pac. 15; *Illinois Trust & Savings Bank* v. *City of Arkansas City,* 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518.)    Nevertheless the statute is the measure of the power granted, whether the particular power in question is assignable to the one class or the other.    The inquiry must always be in this class of cases: (1) Whether there is an express grant; (2) whether there is a grant by necessary implication; or (3) whether the power in question is indispensable to the accomplishment of the object of the corporation.

Now, it is conceded by counsel on both sides—and rightfully [4] so, we think—that a city has the power, under the general law relating to cities and towns, to install at public expense a lighting plant to supply light, not only for its public buildings and streets, but also for use by its inhabitants.    Section 3259, Revised Codes, provides: "The city or town council has power: 1. To make and pass all by-laws, ordinances, orders and resolutions not repugnant to the Constitution of the United States, or of the state of Montana, or of the provisions of this title, necessary for the government or management of the affairs of a city or town, for the execution of the powers vested in the body corpo-

rate, and for carrying into effect the provisions of this title.
\* \* \* 5. To build or hire all necessary buildings for the use
of the city or town, and to heat and light the same. \* \* \*
7. To provide for lighting and cleaning the streets, alleys, and
avenues. \* \* \* 64. To contract an indebtedness on behalf of
a city or town, upon the credit thereof, by borrowing money or
issuing bonds for the following purposes, to-wit: erection of pub-
lic buildings, construction of sewers, bridges, waterworks, light-
ing plants,'' *etc.* A reading of these provisions together leads
to the conclusion that it was the purpose of the legislature to en-
able a city or town to establish and maintain at public expense
a lighting system to supply the needs of its inhabitants, just as
it was the purpose to enable it to make suitable provision to serve
their convenience and secure their health and comfort by pro-
viding bridges, sewers, and a water supply; for it is clear that
in providing for bridges, sewers, and a water supply, it had in
mind the inhabitants of the municipality as a whole. Therefore,
under the rule of construction applicable which is expressed in
the maxim *noscitur a sociis,* the provision for lighting plants
must be given the same scope.

But, as we have said, it is not controverted that the city has
ample power in this behalf. The theory adopted by the trial
court and urged here by counsel for plaintiff is that the city has
[5] no power to expend any portion of the surplus in the light
and power fund, even though the expenditure will turn to profit-
able use what has heretofore been a total loss, because the statute
does not so expressly declare, or, in any event, because the install-
ment of the improvement is not indispensable to the well-being
of the city. A brief consideration of the subject will demonstrate
that this theory is not correct. When a city is engaged in oper-
ating a municipal plant under an authority granted by the gen-
eral law, it acts in a proprietary or business capacity. In this
behalf it stands upon the same footing as a private individual
or a business corporation similarly situated. (McQuillin, Mun.
Corp., sec. 1801; Dillon, Mun. Corp. (5th ed.), sec. 1303; *Helena
Consol. Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac.

382; *City of Henderson* v. *Young,* 119 Ky. 224, 83 S. W. 583; *Omaha Water Co.* v. *Omaha,* 147 Fed. 1, 77 C. C. A. 267, 8 Ann. Cas. 614, 12 L. R. A. (n. s.) 736; *Davoust* v. *City of Alameda,* 149 Cal. 69, 9 Ann. Cas. 847, 5 L. R. A. (n. s.) 536, 84 Pac. 760; *Western Sav. Fund Soc.* v. *Philadelphia,* 31 Pa. 175, 72 Am. Dec. 730; *Indianapolis* v. *Indianapolis Gas L. etc. Co.,* 66 Ind. 396.) This proposition being conceded, as it must be, it logically follows that the city may install the necessary fixtures and appliances and conduct its operations as does a private corporation engaged in the same kind of business. Common prudence requires that it anticipate the probable growth of population and increasing future needs; that it take note, from time to time, of changing conditions, and adopt improved devices in order to bring and keep the plant up to the highest degree of efficiency; that it make such disposition of any surplus or by-product as will promote economy in its operation and gain for the people the greatest possible return for the capital invested—in short, that it do anything that an intelligent business man or corporation, guided by the dictates of prudence and experience, would do under the same circumstances. A private corporation having a franchise to supply the inhabitants of a city with water would be guilty of want of prudence and foresight if it should obtain a supply sufficient for present needs only, without regard to a probable increase in population and hence to a growing demand upon it. So it would be chargeable with a lack of business capacity if in the meantime it should permit the surplus to go to waste, instead of selling or leasing it for some other profitable use. The same holds true of a corporation organized to supply light. It would be short-sighted indeed if it limited the capacity of its plant to actual present necessities. It is a matter of common knowledge that gas companies have several by-products. A neglect by such a company to turn these by-products to profitable use by selling them, and, if necessary to enable it to do so, to incur the preliminary expense required for that purpose, would exhibit lack of business capacity. These remarks are applicable

to a city which under authority of law engages in the same kind of an enterprise. It holds the property represented by the investment, in trust for its citizens. The law which enables it to assume this trust by necessary implication confers the power upon it and its officers to execute it, and thereby imposes upon them the duty to gain the greatest benefit to the taxpayers. If it has a present surplus of water or current, the dictates of common business prudence require that such surplus be sold, and the proceeds devoted to public use, until the increasing demands of the people absorb it. (*Pikes Peak Power Co.* v. *Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333.) So of the surplus and by-products of city gasworks. To say that a city may not turn the waste or exhaust steam from its electric light plant to profitable use is to say that, though the legislature has empowered it to install and operate a light plant, it has withheld from it the power to operate it upon intelligent and economic principles. This cannot be so. On the contrary, the grant of power to install and operate necessarily implies all the incidental power to do anything that any business man or corporation ought to do.

The statute does not in terms confer the power upon the city to install and operate a heating plant, except for its public buildings. For present purposes it may be conceded that it would not be lawful for a city to install a steam-heating plant to supply its inhabitants or for the defendant city to manufacture steam at its lighting plant for that purpose. This consideration by no means carries with it the conclusion that it may not sell its waste steam, and, if it cannot do so otherwise, may not at public expense lay the mains or conduits necessary to convey it to places where there is a demand for its use, and there install the appliances necessary to enable it to meet the demand. On the contrary, we think it not only has the power, but it is its duty, to do so, provided this is practicable and will prove a source of profit, and provided the expenditure required will not create an indebtedness or permanently impair the income derived from the plant.

The order is reversed, and the cause is remanded, with directions to the district court to proceed in accordance with the conclusions stated in this opinion.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

