## Richmond

### CITY OF MARTINSVILLE, ET AL.

### V.

### BOARD OF SUPERVISORS OF HENRY COUNTY, ET AL.

September 11, 1981.

Record No. 790813.

Present: Carrico, C.J., Harrison, Cochran, Poff, Compton and Stephenson, JJ.

506

*David B. Worthy, City Attorney*, for appellants.
*L. Dale McGhee, County Attorney; Edwin A. Gendron, Jr.
(Gendron, Kirby & Smith*, on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this appeal, we consider whether a city may properly exercise its common-law right to sell surplus water in an adjoining county without the county's authorization and consent.

Appellee Board of Supervisors of Henry County filed in December of 1978 a motion for declaratory judgment against appellant City Council of the City of Martinsville seeking a determination of the rights of the parties for providing water service within the County. The motion asserted the City Council had authorized a water connection to Frith Construction Company for service outside the City and within the County in the area of a specific water project of the Henry County Public Service Authority.

The trial court entered *ex parte* a temporary injunction restraining the City for a period of 30 days from connecting the proposed service. Subsequently, the Authority intervened on the County's side of the case and sought to have the injunction made permanent. Further, the Authority asked the court to declare it had the sole and exclusive jurisdiction for providing water service in the County.

In January of 1979, an ore tenus hearing was held and the temporary injunction was extended. Later, the trial court ruled against the City and made the injunction permanent but permitted the connection to be made and City water to be used by Frith pending any appeal. Subsequently, we granted the City an appeal from the March 1979 final judgment in favor of the County and the Authority.

The facts are undisputed. At the time of the hearing, the City's water treatment plan and water supply system had a daily surplus of 1.7 million gallons. For a number of years the City had sold a portion of the surplus to County customers using a water supply system with water mains laid in the County. The mains were laid in 1963 to serve an industrial park situated in the County on land then owned by the City. The purpose for extending the water system into the County was to develop the park and, in turn, to "help the economic base of the community."

In 1964, by appropriate resolution, the Board created the Authority pursuant to the Virginia Water and Sewer Authorities Act, Code §§ 15.1-1239 to -1270, and the State Corporation Commission issued a charter in 1965. Initially, the Authority was empowered to undertake a sewerage project in one area of the

County. Subsequently, the County specified in a 1970 resolution that the Authority's jurisdictional area shall include all of Henry County. "Jurisdictional area" was defined by a witness as the Authority's "area of operation." The 1970 resolution also specified that "none of the powers granted [the Authority] . . . shall be exercised . . . in the construction, improvement, maintenance, extension or operation of any project or projects which in whole or in part shall duplicate or compete with existing utilities, public or private, serving substantially the same purposes."

In 1974, by appropriate resolution the County empowered the Authority to undertake certain additional projects, including the "U.S. 220 South Water Project." The 1974 resolution generally provided, *inter alia*, that the owners of all buildings "presently existing or constructed subsequent to the installation" of the Authority's water system and situated within the Authority's project area were required to connect such building directly to the Authority's water main if such main was "at a distance not greater than 300 feet" from such building.

In November of 1978, the City granted Frith's request to connect a warehouse that Frith was building in the County in the U.S. 220 South Water Project area to a City water main located approximately eight feet from the structure. The connection did not require laying of any new mains or enlargement or extension of any existing mains. The warehouse was outside but adjacent to the boundary of the industrial park. The structure was 430 feet from the nearest Authority water main.

Upon learning of the City's plan to furnish water to Frith, the Authority and County objected. They contended the Authority was capable of providing the service and insisted the City's action violated the service area of the Authority as delineated by the County. This litigation ensued.

The trial court held that when the City undertook "to dispose of its surplus water outside of the municipality and within Henry County it [was] subject to legislative control of the Board of Supervisors of Henry County and the jurisdiction which it ha[d] conferred upon its Public Service Authority." On appeal, the County and Authority, adopting the trial court's reasoning, contend the City has no right to "encroach" upon the Authority's service area and to sell surplus water in the County without the County's approval. We disagree.

A city has the power, without the aid of statute, to sell its surplus water rather than permitting it to be wasted. *Mount Jackson* v. *Nelson*, 151 Va. 396, 403, 145 S.E. 355, 357 (1928). And this power includes the authority to vend such water to customers beyond the corporate limits. *South Norfolk* v. *Norfolk*, 190 Va. 591, 600-01, 58 S.E.2d 32, 36 (1950); *Light* v. *City of Danville*, 168 Va. 181, 204-05, 190 S.E. 276, 285 (1937). But the municipality's right to market surplus water in an adjacent jurisdiction is subject to any express limitations that are placed upon the right by the purchaser's local governing body and by state statute. In other words, the Authority here had the power, to the extent sanctioned by the County and by state law, to compel the connection and use of its water, and to prohibit the use of any other water source. Code § 15.1-1261.

In the present case, however, neither the County's limitations nor state law precluded this City connection to the Frith warehouse.* Stated differently, the Authority had not acquired, in its jurisdictional area of operation, the exclusive right to furnish water to the property in question. At best, the Authority's right to sell water for use at the Frith site was coequal with the City's right to serve the property. And Frith had the prerogative to select the system that would service its building.

As we have stated, the City had the power to sell its surplus water beyond its corporate limits. One of the limitations on that power is found in Code § 15.1-1261. That statute provides, in part, that when, as here, a water system is constructed under the Virginia Water and Sewer Authorities Act, the owner of each parcel of land, abutting upon a street containing a water main and upon which parcel a building has been constructed for industrial use, shall connect such building with such water main, "if so required by the rules and regulations or a resolution of the authority, *with concurrence of [the] . . . county that may be involved.*" (Emphasis added.) In the present case, Henry County "concurred" only to the extent of permitting the Authority to compel connections of buildings located "at a distance not greater than

---

* Code § 15.1-875 provides, in part, that no municipal corporation, after July 1, 1976, shall "provide or operate" outside the corporate limits any water supply system prior to obtaining the consent of the county or municipality in which the system is to be located. The statute is not applicable in this case because it contains the proviso that no consent shall be required for the operation of, as here, any water supply system in existence on July 1, 1976, or for the orderly expansion of such water supply system.

300 feet" from the Authority's mains. Thus, all buildings situated beyond that radius are not subject to the Authority's compulsory connection requirement. Having the power under § 15.1-1261 to make the distance greater, the County decided to limit it to 300 feet, while also providing, in the 1974 resolution, that the Authority should not duplicate or compete with existing utilities serving substantially the same purposes. Under these circumstances, the 300-foot limitation and the non-competition caveat blend to exclude the subject property from the Authority's exclusive jurisdiction. Consequently, the Authority, lacking power to compel connection of the Frith warehouse, may not properly prevent its connection by the City.

For these reasons, we will reverse the order appealed from, dissolve the injunction and dismiss the motion for declaratory judgment.

*Reversed and final judgment.*