# CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Water Authority

  v.

City of Falls Church

January 6, 2010

Case No. (Law) 2008-16114

BY JUDGE R. TERRENCE NEY

  This matter came before the Court on September 23, 2009. Subsequent to a bench trial and after considering the pleadings and the arguments of counsel, the Court took the matter under advisement. The following embodies the Court's ruling.

*Facts*

  This is a dispute between providers of municipal water service in the northeastern part of Fairfax County. No evidence was presented as to the history of how the City of Falls Church (the "City") and the Fairfax County Water Authority ("Fairfax Water") became two separate water authorities and which was the initial provider. From prior litigation between these parties, however, it appears clear that the City — actually, its predecessor the Town of Falls Church — was from at least the 1940s

providing water service to Falls Church as well as portions of Fairfax County. *See City of Falls Church, Virginia v. Fairfax County Water Auth.*, 2007 U.S. Dist. LEXIS 36004 (2007); *see also City of Falls Church, Virginia v. Fairfax County Water Auth.*, 272 Fed. Appx. 252 (4th Cir. 2008). The resolution creating Fairfax Water was adopted on September 4, 1957, and on September 26, 1957, the charter was filed with the State Corporation Commission.

The historical evidence offered in this case began as of 1959 when, after various disputes and a lawsuit brought by Fairfax Water against the City, the City and Fairfax Water entered into a thirty year agreement identifying exclusive service areas for each provider of public water service. The agreement permitted the City to provide water services for residents and businesses outside its city limits to include an eastern portion of Fairfax County (the "Extended Service Region"). While the agreement was in effect, the City developed a public water supply system capable of serving the Extended Service Region. Although the agreement expired in 1989, the City continues to serve that area.

The City operates its water service on a for-profit basis and charges about twice the rate charged by Fairfax Water. The City's commodity charge for water is $3.03 per 1,000 gallons, a rate set in June 2005. (Tr. 496:20-497:4; 1476:18-1477.7.) The City's water rates are significantly higher than Fairfax Water's currently commodity charge of $1.83. (Tr. 496:5-15.)

The City transfers the profits from the water service revenues into its general fund as surplus profit[1] and uses the funds to provide other services to residents of the City. In the past, it has charged County residents a higher rate than the rate charged to its own residents. A typical Fairfax County customer pays $85.19 quarterly to the City compared to $50.97 for a customer of Fairfax Water. About ninety-two percent of the City's customers are residents of Fairfax County.

Fairfax Water's Complaint alleges monopolization and attempted monopolization in violation of the Virginia Antitrust Act and that the City's current practice of overcharging for municipal water service and transferring the profit to its general fund to subsidize other services in the

---

[1] Although the City calls the current profit transfer a "management fee," its corporate designee admitted that the "management fee" does not pay for any management at all because all such management costs are included under "administration." (Tr. 230:2-7.)

City of Falls Church establishes an unconstitutional extra-territorial tax. This Opinion Letter addresses the constitutional issue only.

*Analysis*

Two questions are presented for decision. First, whether the City is acting in violation of the terms of its charter with regard to the financial operation of its water company? Secondly, whether charges for water to non-residents of the City amount to unconstitutional taxation on those non-resident purchasers?

*I. The City's Practice of Setting Its Water Rates
to Generate Surplus Profits for Transfer to the General Fund
Violates the City's Charter*

The City Council of Falls Church set the City's water rates in 2003, 2004, and 2005 so that receipts would not only exceed expenses but create a substantial profit. The annual profit from 1985 to 1998 ranges from $1 million to $1.6 million per year. These sums doubled and tripled from 1999 to 2002, totaling nearly $4.9 million in 2002. Since 1999, the profit transfers have averaged about $2.3 million per year. The City's transfers to the general fund, ninety-two percent of which is generated by Fairfax County customers, have significantly reduced the local tax burden on Falls Church citizens without any corresponding benefit to the City's Fairfax County ratepayers. The Fairfax County ratepayers do not sit on the Falls Church City Council or elect its members.

Since 1950 the City's Charter has required that it set water rates so that "receipts [are] equal to expense." *Compare* 1950 Va. Acts, ch. 323, § 13.09, *with* 1995 Va. Acts, ch. 655, § 13.09.

> The rates to be charged for the respective services of the water and sanitary sewage utilities shall be fixed from time to time by the council on the recommendation of the director of public utilities and the city manager. If, for any three consecutive fiscal years, the average annual receipts of any utility shall be less than its average annual expense, it shall be the duty of the director of public utilities and the city manager to recommend and the council to adopt for that

utility a schedule of rates which in its judgment will produce receipts equal to expense.

1995 Va. Acts, ch. 655, § 13.09.

Although the General Assembly has over time amended several portions of the City's Charter, none of these changes has altered the basic rate-making methodology. That section continues to require that the water rates are to be set with "receipts equal to expense," without building any surplus or "return on equity" into the rates themselves.

In short, the Charter has always made clear that the water rates were to be set so that anticipated receipts equaled anticipated expenses without resulting in a surplus created by the rates themselves. The City points out that § 13.07 provides that the City Council, by a two-thirds vote, may transfer any surplus to either the general fund or the renewal fund. *Id.* § 13.07. Notwithstanding, this transfer provision confounds the broader mandate of the charter, namely, that the City should be operating the water company in a manner whereby receipts are to equal, not exceed, expenses. There should not be a "surplus" profit to transfer to any fund, by a two-thirds vote or otherwise.

In short, the City's rate making for its water services is plainly at odds with the mandate of its charter. Receipts with a profit do not equal expenses.

## II. Transferring Water Fund Surpluses to the General Fund Constitutes an Unconstitutional Tax

The Virginia Supreme Court, in *Marshall v. Northern Virginia Transp. Auth.* stated that the Commonwealth's taxing power is different from other powers circumscribed by the Virginia Constitution. 275 Va. 419, 657 S.E.2d 71 (2008). The court observed that the constitution, particularly Art. I, § 6, "prohibits taxation of citizens without their consent or that of their elected representatives." *Id.* at 434, 657 S.E.2d at 79. Notwithstanding the presumption in favor of constitutionality, the court invalidated the General Assembly's 2007 plan to fund transportation improvements in Northern Virginia. The legislation in question allowed the Northern Virginia Transportation Authority ("NVTA") to impose seven different transportation fees and taxes and to use the money to repay revenue bonds for transportation improvements. The proposed fees raised moneys greater than the cost of service to which they related. This, the court held, constituted a "tax." *Id.* at 431, 657 S.E.2d at 77 (holding that

"when the primary purpose of an enactment is to raise revenue, the enactment will be considered a tax, regardless of the name attached to the act."). As such, the court concluded that, although the General Assembly specified the amount of each charge, the statute constituted taxation-without-representation because the elected legislature delegated to the NVTA, an unelected body, the decision whether to impose the fees. *Id.* at 432, 657 S.E.2d at 78.

In this case, the Falls Church City Manager's Memorandum of May 13, 2005, made clear that the then-existing rates were more than sufficient to operate the water system and pay for all capital improvements. It also showed that the rate increase was needed simply in order to transfer more money to the general fund. Tr. 366:4-374:15. As in *Marshall*, the positive difference between expenses and revenues constitutes a tax.

The City, similarly to the NVTA in *Marshall*, imposes this tax primarily on persons who do not elect representatives or themselves sit on the City's governing board. Indeed, ninety-two percent of that transfer was funded by Fairfax County customers, who are not represented on the Falls Church City Council. The Court finds that the profits derived from the rates charged to Fairfax County residents violate the principle of no-taxation-without-representation and, thus, amount to an unconstitutional tax.

In *Robinson v. City of Norfolk*, 108 Va. 14, 60 S.E. 762 (1908), the Supreme Court of Appeals[2] held that the General Assembly did not have the power to authorize Norfolk, a city, to levy a license fee on a circus located just outside the city limits "for the sole purpose of raising revenue to defray the general expenses of such city." *Id.* at 21, 60 S.E. at 764. The Supreme Court reasoned that:

> To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes. ... It is certainly difficult to understand how the taxation of a district can be

---

[2] The Supreme Court of Appeals and the later named Supreme Court of Virginia will be referenced throughout as the Supreme Court.

defended where people have no voice in voting it, in selecting the purposes, or in expending it.

*Id.* at 17, 60 S.E. at 763 (*quoting Cooley on Taxation* (2d ed.), ch. 5, pp. 140, 141-42).

The Supreme Court extended *Robinson* in *City of Charlottesville v. Marks' Shows, Inc.*, 179 Va. 321, 18 S.E.2d 890 (1942). Like Norfolk, Charlottesville attempted to impose a fee to cover the costs of police service for a carnival located just outside the City limits. The fee was two to three times more than the cost of the service, and the City transferred the moneys to its general fund. *Id.* at 330, 18 S.E.2d at 895. The Supreme Court, in addition to finding that the tax improperly taxed non-residents of Charlottesville, found the ʽfee unconstitutionally void and explained that "[t]he exacted charge must bear some reasonable relation to the additional burdens imposed upon the municipality and the necessary expenses involved in the police supervision." *Id.* at 329, 18 S.E.2d at 895.

This cost-of-service principle was extended to government-run utilities in *McMahon v. City of Virginia Beach*, 221 Va. 102, 267 S.E.2d 130 (1980). The Supreme Court there held that a Virginia Beach ordinance requiring non-resident owners to pay ʽfor new water lines on their properties was valid because it did not exceed the actual cost of service. *Id.* at 107, 267 S.E.2d at 134. Because "a reasonable correlation arose between the benefit conferred and the cost exacted," the ordinance was not a "revenue measure." *Id.* at 107-08, 267 S.E.2d at 134.

The Supreme Court in *Tidewater Ass'n of Homebuilders, Inc. v. City of Virginia Beach*, similarly upheld another municipal water charge because the "fee revenues will not exceed the City's cost in providing the service." 241 Va. 114, 121, 400 S.E.2d 523, 527 (1991). Also, in *Mountainview, L.P. v. City of Clifton Forge*, the Supreme Court held that municipal fees for trash service were reasonable, despite the fact that they generated a surplus, because the surplus was collected "in anticipation of future expenses." 256 Va. 304, 311, 504 S.E.2d 371, 375 (1998).

The Supreme Court reviewed these cases in *Eagle Harbor, L.L.C. v. Isle of Wight County* and reaffirmed that "*McMahon* and its progeny establish that the judicial inquiry as to reasonable correlation relating to a municipal fee is directed to whether that fee is a bona fide fee-for-services or an 'invalid revenue generating device'." 271 Va. 603, 615, 628 S.E.2d 298, 304 (2006).

The City attempts to distinguish the *McMahon* line of cases by arguing that the "reasonable correlation test" is limited to charges that a

locality levies on its own residents. This argument ignores the fact that these cases flowed from *Robinson* and *Marks' Shows*, both of which involved extraterritorial taxation. The fact that the plaintiffs in the *McMahon* line of cases lived within the particular locality does not demonstrate that those cases overruled *Robinson* or *Marks' Shows*, or that the cost-of-service principle does not apply to municipal fees charged to non-residents.

The Loudoun County Circuit Court recently applied the cost-of-service principle in *Giordano v. Town of Leesburg* to invalidate the higher charges for water and sewer service that the Town of Leesburg imposed on its Loudoun County customers. *Giordano v. Town of Leesburg*, 77 Va. Cir. 421 (Loudoun County 2009). The trial judge there struck down the higher rates, concluding that they were not supported by any cost-based rationale. *Id.* (The question of an extraterritorial tax was not presented in that case because all of the fee revenues received were "used exclusively to fund water and sewer service." *Id.* at 422.) Here, it is undisputed that the water rates generate surpluses that exceed the cost of service and that the surpluses are also diverted to the City's general fund.

The City relies on language in *Corporation of Mount Jackson v. Nelson*, which addresses whether a municipality may consider matters of "profit" in deciding whether to provide utility service to a single, new customer located outside its territorial limits. 151 Va. 396, 145 S.E. 355 (1928). In *Mount Jackson*, the town reneged on a contract to extend a water line to a gas station 1,000 feet north of town, claiming the contract was *ultra vires*. *Id.* The Supreme Court disagreed. In dictum, the Court said that surplus water should not be permitted "to run to waste when it can be sold at a profit." *Id.* at 403, 145 S.E. at 357. It was common for Virginia municipalities "to furnish water to those who live beyond their limits. This is a source of profit to them." *Id.* at 407, 145 S.E. at 358.

Similar dictum appeared in *Town of Rocky Mount v. Wenco of Danville, Inc.*, 256 Va 316, 506 S.E.2d 17, 20 (1998). In that case, a Wal-Mart store agreed to pay $250,000 to induce the Town to extend a new sewer line to the property, which was located outside the Town's limits. No other customers were served by this line. When an adjacent fast food restaurant requested permission to connect, the Town demanded $125,000 in order to do so. The restaurant argued that the Town had a legal duty to provide sewer service and could not charge a connection fee that was higher than what it charged "to other users both inside and outside the Town." *Id.* at 319 and n. 2, 506 S.E.2d at 19 and n. 2. The restaurant relied on the "holding out" doctrine, an exception to the general rule that a

municipality does not have to provide service outside of its service area. *Id.* at 321, 506 S.E.2d at 20. Under this doctrine, a town that provides utility service generally to a particular area cannot then pick and choose its customers; it must offer service as a public utility on a non-discriminatory basis. *See* 12 Eugene McQuillin, *The Law of Municipal Corporations*, § 35.52, at p. 795-96 (3d ed. 2006).

The Supreme Court in *Rocky Mount* ruled that, while it had not yet adopted the "holding out" principle, the principle would not apply under the facts presented as the Town had not held itself out as providing sewer service generally to the area in question. *Id.* at 321, 506 S.E.2d at 20.

*Mt. Jackson* and *Rocky Mount* are plainly quite different from the situation here. Unlike the towns there, the City here has held itself out for decades as the public water provider in eastern Fairfax County. In fact, the City's own expert admitted that the City's Fairfax County customers are "captive" and have nowhere else to go. Tr. 888:13-19. The doctrine has been embraced in Virginia both by the Attorney General, 1989 Op. Att'y Gen. Va. 137, 1989 Va. AG Lexis 161 (1989), and by other circuit courts, *e.g., Stoneleigh Group, Inc. v. Town of Round Hill*, 50 Va. Cir. 42, 43 (Loudoun County 1999) ("The [holding out] exception is very reasonable and just plain 'makes sense'."). They are captives to a tax that they cannot challenge by election. That is plainly unconstitutional.

### III. Waiver, Estoppel, and Laches

The City asserts in its affirmative defenses that Fairfax Water may not assert its constitutional claims because it has waited too long to bring them. These positions are without merit.

These parties have had a long history with one another, including prior litigation in both the state and federal courts, and each has long been well aware of the other's position and wishes. For more than half a century, Fairfax Water and the City have been circling one another in order to determine which would be the primary water service provider to parts of eastern Fairfax County.

Both Fairfax Water and the City may quarrel with such a broad characterization. Each insists that its prime purposes are to serve the public and provide quality water service at a reasonable price. Notwithstanding, though each may be correct in such an assertion, each wishes, in addition to its public responsibilities, to be, if not the primary, at least a major water provider for Fairfax County. It is telling that, even with the Court's view of the correctness of Fairfax Water's constitutional challenge, not a single

citizen from Fairfax County who is served by the City has complained of the City's service or its charges, much less joined in this litigation — not one. This underscores the fact that this suit is ultimately about power, market power, more than anything else.

In all events, no one can through inaction render an unconstitutional act constitutional. The Court does not find that Fairfax Water has slept on its rights or is barred now from asserting them. Even if it had — and it has not — a constitutional challenge, which legally is what this case presents, may be brought at any time.

## Conclusion

Because the City is in violation of its charter and because the transferring of the profit derived from the sale of water and related service into its general fund amounts to an unconstitutionally void tax on non-residents of the City. Fairfax Water is entitled to injunctive relief. Such relief is warranted because the remedy at law is inadequate. *See Thompson v. Smith*, 155 Va. 367, 386-87, 154 S.E. 579, 586 (1930) ("It is recognized that an injunction will lie to enjoin the threatened enforcement of an invalid statute or ordinance where the lawful use and enjoyment of private property will be injuriously affected by its enforcement ... unless the remedy at law be manifestly as complete and adequate as an injunction suit."). Fairfax Water is not seeking disgorgement of fees improperly paid in the past. It only wants for what is plainly an illegal and unconstitutional practice to come to an end.

### Final Decree on Count V Concerning
### the City's Water Rates and Water Fund Transfers

Count V of the Amended Complaint came before this Court for a trial and hearing *ore tenus* on September 14, 15, 16, 17, 21, 22, and 23, 2009, and the parties subsequently submitted written briefs, and it appearing to the court, for the reasons stated in the Opinion Letter of January 6, 2010, that Fairfax Water is entitled to judgment on Count V, it is, therefore, adjudged, ordered, and decreed that:

1. Judgment is entered in favor of Fairfax Water and against the City of Falls Church on Count V of the Amended Complaint;

2. The City of Falls Church is enjoined from transferring any moneys from its water fund to its general fund for purposes unrelated to the water system, including the "management fee" transfer for the City's

Fiscal Years 2009 and 2010. This restriction shall not prevent the City from transferring from the water fund to the general fund an amount corresponding to compensation for reasonable direct and indirect costs associated with operating the water system and a reasonable payment in lieu of taxes (PILOT) with regard to water system property owned by the City within its corporate limits;

3. The City of Falls Church must comply with § 13.09 of the City Charter, 1995 Va. Acts, ch. 655, in setting water rates that, in the judgment of the City Council, will result in receipts equal to expense (including any future expense of the water system). In setting its water rates, the City may not include as an "expense" any surplus to be transferred to the general fund in violation of paragraph two of this Decree;

4. The last sentence of Section 13.07 of the City Charter, 1993 Va. Acts, ch. 969, is declared unconstitutional to the extent it permits the City to transfer water moneys to the general fund in a manner inconsistent with paragraphs two and three;

5. Count V is hereby severed from the remaining counts in this case, and this judgment is final and conclusive as to Count V.

This decree is final as to Count V.