STATE EX REL. BEAN, RESPONDENT, v. LYONS ET AL., APPEL-
LANTS.

(No. 2,536.)

(Submitted June 26, 1908. Decided July 18, 1908.)

[96 Pac. 922.]

*Schools—Removal—Election for Change of Site—Powers of Board of Trustees—Statutory Provisions—Mandamus.*

Schools—Removal—Election for Change of Site—Powers of Board of Trustees.

1. Section 1797, Political Code, as amended by Act of 1897 (Laws 1897, p. 130), which declares that every school board shall have power to build or remove schoolhouses and to purchase or sell school lots, when directed by a vote of the district so to do, is not only a grant of power to such boards, but also a limitation of their authority in the premises; so that they cannot do any of the acts referred to without first obtaining the consent of the electors of the district.

Same—Election for Change of Site—Method of Procedure.

2. While there is no statutory provision directing school boards when and how to call an election to decide the question whether school buildings shall be built or removed, still the trustees cannot act without authority from the electors; but when necessity for action arises, the provisions touching the periodical meetings for the election of trustees or for calling special elections to obtain power for the issue of bonds, and the like, furnish a safe guide to such boards as to the procedure to be observed.

Same—Emergency.

3. While in cases of emergency and for temporary purposes a school board may probably move a school without first consulting the electors of the district, the trustees are not justified in willfully disregarding the right of the people to say what shall be done with reference to the permanent location of the school.

Same.

4. Where, notwithstanding the proposition of moving a district school building to a certain site had been twice rejected by the electors of the district, the school board, without the requisite authority, ordered its removal to such site, although ample time elapsed between the date at which the board was notified by the owners of the land upon which the schoolhouse stood, to remove it, and the date at which the removal was actually consummated, to hold another election, or, in case of unfavorable action by the electors, to institute proceedings by condemnation of the site upon which the building was then situated, an emergency such as to justify the trustees to act without authority did not exist.

Same—Election for Change of Site—*Mandamus.*

5. *Mandamus* to require the trustees of a school district to call an election to determine the location of a site for a schoolhouse was the proper remedy where the board arbitrarily and in willful disregard of the provision of section 1797, Political Code, as amended (Laws 1897, p. 130), removed a school to a site selected by themselves, without consulting the electors of the district.

Same—*Mandamus*—"Party Beneficially Interested."
6. A resident and taxpayer of a school district who sought by *mandamus* to compel a school board to submit the question of the removal of a school to the electors of the district was a party beneficially interested within the meaning of section 1962, Code of Civil Procedure, and entitled to make the application for the writ.

Same—*Mandamus*—Defenses.
7. A school board is not vested with any discretion relative to the calling of an election to determine the location of a school site, but must do so before they can act (Laws 1897, p. 130); hence the contention that the issuance of a writ of mandate to compel them to call an election for such purpose will control their discretion, has no merit.

Same.
8. Nor could the board above mentioned defend its action on the ground that the district was not financially able to secure a site and erect a building. The electors were the final arbiters of that question.

*Appeal from District Court, Madison County; Lew. L. Callaway, Judge.*

MANDAMUS by the state, on the relation of Milton Bean, against Phillip Lyons and others, as trustees of school district No. 35, Madison county. From a judgment for plaintiff, defendants appeal. Affirmed.

*Messrs. Clark & Duncan,* for Appellants.

The school board had no authority to occupy and conduct school in the old schoolhouse after September 24, 1907, while it remained upon the premises of Staudaher & Johnson. It would have been unlawful for them to do so, and had they done so, they would have been trespassers and liable to a suit for damages by the owners of the land upon which the building stood. Such being the case, the electors of the district were not entitled to a vote upon the question as to whether or not the schoolhouse should be moved. It was the plain duty of the school board to remove it whether it was the will of the electors of the district or not. A writ will not issue to compel an officer to do an act by the doing of which he would subject himself to an action for damages. (*People* v. *Blocki*, 203 Ill. 363; 67 N. E. 809; *People* v. *Mayor etc. of Bloomington*, 38 Ill. App. 125; *State* v. *Yant*, 134 Ind. 121, 33 N. E. 896; *French* v. *Common Council etc. of South Haven*, 85 Mich. 135, 48 N. W. 174; *State* v. *McCann*, 107 Wis. 348, 83 N. W. 647; 26 Cyc. 301.)

Subdivision 6 of section 1797, Political Code, makes it the duty of a school board to build and remove schoolhouses only when directed by a vote of the district so to do. There is nothing in the law which makes it a duty of the board to call such election, and therefore no court can, by writ of mandate, compel such an election to be held. Before *mandamus* will lie, the obligation to perform it must be commanded by statute. (*Barber* v. *Mulford*, 117 Cal. 356, 49 Pac. 206; *Farmers' High Line Canal Co.* v. *People*, 8 Colo. App. 246, 45 Pac. 543; *Bright* v. *Farmers' High Line Canal Co.*, 3 Colo. App. 170, 32 Pac. 433; *Parrott* v. *Bridgeport*, 44 Conn. 180, 26 Am. Rep. 439; 26 Cyc. 164, and notes.)

*Mandamus* can merely compel the board to exercise its discretion, and it cannot compel it to exercise it in a particular way. (*Seymour* v. *Ely*, 37 Conn. 103; *United States* v. *Dubuque Co. Commrs.*, 1 Morris (Iowa), 31; *State ex rel. Monocure* v. *Dubuclet*, 28 La. Ann. 698; *In re Prickett*, 20 N. J. L. 134; *Commonwealth* v. *Doylestown*, 16 Pa. Co. Ct. Rep. 161.) Neither will *mandamus* lie to compel school authorities to remove a schoolhouse to another site where the effect of the issuance of the writ would control the exercise of their discretion. (*Peters* v. *Warner*, 81 Iowa, 335, 46 N. W. 1001; *Heintz* v. *Moulton*, 7 S. Dak. 272, 64 N. W. 135.) When the statute prescribing the duty does not clearly and distinctly create it, the writ will not lie. (*Birch* v. *Phelan*, 127 Cal. 49, 59 Pac. 209.) We might also mention that *mandamus* is a remedy for official inaction. (*City of Atlanta* v. *Wright*, 119 Ga. 207, 45 S. E. 994; *State* v. *Lewis*, 76 Mo. 370; 26 Cyc. 158, and notes.) And it will not lie to undo what has been done. (*Sweet* v. *Conley*, 20 R. I. 381, 39 Atl. 326; *State* v. *Miller*, 1 Lea (Tenn.), 596; 26 Cyc. 158, and notes.) In the case at bar, there was no official inaction.

The appellants could not be compelled by a court to acquire a school site and build a schoolhouse for the district unless it clearly appeared and it was found by the court that the district had funds available with which to pay for such site and

building.   (*State* v. *Board of Electors*, 24 Ohio C. C. 654.)    A school board is a *quasi* judicial body and its acts pertaining to this school matter *quasi* judicial, and therefore *mandamus* cannot be invoked to correct its errors and control its discretion.   (*State* v. *Crites*, 48 Ohio St. 460, 28 N. E. 178.)

The respondent here had a right to appeal to the county superintendent, and from thence to the state superintendent, and he is therefore not entitled to a writ of *mandamus* until such appeals have been taken, and his right to redress denied or unsecured by or through such officers.   (Mont. Pol. Code, sec. 1735; *Marshall* v. *Sloan*, 35 Iowa, 445; *State* v. *Black*, 166 Ind. 138, 76 N. E. 882; *Newby* v. *Free*, 72 Iowa, 379, 34 N. W. 168.)

*Mr. Edmund J. Callaway,* for Respondent.

*Mandamus* is not only the proper remedy, but the only one.   (*State* v. *Marshall*, 13 Mont. 136, 32 Pac. 648; *Eby* v. *Board of School Trustees*, 87 Cal. 166, 25 Pac. 240.)    Superintendents of schools, school trustees or directors, or other school officials, may be compelled by *mandamus* to perform their ministerial duties, but not to exercise their discretionary powers in any particular manner.   (25 Cyc. 281.)

The provision of section 1797, Political Code, is mandatory and leaves the trustees with no discretion.   They must call an election.   If the trustees have any discretion, it can be controlled by *mandamus* where the discretion is abused.   (*State ex rel. Eaves* v. *Rickards*, 16 Mont. 158, 50 Am. St. Rep. 476, 40 Pac. 210, 28 L. R. A. 298, and cases cited; *Wood* v. *Strother*, 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; *State* v. *Barnes*, 25 Fla. 298, 23 Am. St. Rep. 516, 5 South. 722; *State* v. *Board*, 134 Mo. 296, 56 Am. St. Rep. 503, 35 S. W. 617.)

Counsel for appellants say that because the statute does not expressly command the trustees to call an election to determine the question, the writ will not lie, and therefore the trustees can accomplish their desires, evade the laws and usurp the authority and rights of the people by doing indirectly what they could not do directly.   On this question see generally: *Colt* v.

*Roberts,* 28 Conn, 330; *Farmers' & Merchants' Nat. Bank* v. *School Dist.,* 6 Dak. 255, 42 N. W. 767; *School Directors* v. *Wright,* 43 Ill. App. 270; *Seibert* v. *Botts,* 57 Mo. 430; *Benjamin* v. *Hull,* 17 Wend. (N. Y.) 437; *Moore* v. *State,* 9 Kan. App. 489, 58 Pac. 1004; *Buchanan* v. *Hannibal School Dist.,* 25 Mo. App. 85; *Stadtler* v. *School Dist.,* 61 Minn. 259, 63 N. W. 638; *School Dist. No. 80* v. *Brown,* 2 Kan. App. 309, 43 Pac. 102; *Graves* v. *Jasper School,* 2 S. D. 414, 50 N. W. 904; *Trustees of Schools* v. *People,* 76 Ill. 621.

It is absurd to contend that appeals should have been made to the county or state superintendents, or both. Such officers have no power or authority whatsoever in such case. They could not locate nor direct where the school should be held or the schoolhouse located. They have no power or authority to enforce their orders. Such officers are not clothed with judicial powers. (*School Dist. of Sioux City* v. *Pratt,* 17 Iowa, 16.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an appeal from a judgment directing a peremptory writ of *mandamus* to issue requiring the defendants, trustees of school district No. 35 of Madison county, to hold an election to determine the question of the location of the district schoolhouse. It is alleged in the affidavit, in substance, that the relator is a resident and taxpayer of the district, that for the past nine years the district has owned and used a schoolhouse, with the necessary furniture, fixtures and accessories, situate near the center of the district; that during the first four of these years the land occupied by it was public land of the United States; that during the past five years it has been owned by Staudaher & Johnson, who have acquired the paramount title; that on September 24, 1907, these owners notified the defendants, as trustees, to remove the building from their land; that the defendants Lyons and Koch on or about October 26, 1907, caused to be built in a remote part of the district a new

schoolhouse, and removed thereto from the old building all the furniture, fixtures and other accessories theretofore used therein and in connection therewith, together with the doors, windows, and floors; that they have employed a teacher to conduct a school for the district in the new building; that all these acts have been done without right or authority of law and in violation of their duty, in that they failed and refused to submit the question of the location of the new school building and school to the qualified electors of the district, and neglected to first obtain authority from the electors to erect the new building, as is required by law; that the defendants could have complied with the notice of Staudaher & Johnson by moving the old building a distance not to exceed forty rods, but that, instead of so doing, they erected the new building at a distance of three and one-half miles from the old location, and at a place in the district more convenient to themselves, and at the same time more remote from a majority of the children in the district, making it necessary for them to cross an intervening river and to travel the additional distance of three and a half miles; that the defendants intend to maintain the school in the new building, and to use the money belonging to the district to pay the expense of its construction; that by the action of the defendants aforesaid, the relator and other residents in the district in like situation with himself have been and will continue to be deprived of the benefits of the school for their children, owing to their tender age, the additional distance necessary for them to travel, the danger to them in crossing the river, and the inconvenience and danger due to inclement weather; and that prior to the commencement of this action the relator demanded of the board of trustees that they submit the question of the location of the school building to the qualified electors of the district, but that the defendants Lyon and Koch, trustees as aforesaid, refused and still refuse to do so, though defendant Jones is willing to grant the request.

To the alternative writ the defendant Jones made no appearance or answer. Defendants Lyons and Koch made de-

fense, first, by motion to quash on the ground that the facts stated do not warrant any relief; and, then, upon a denial of this motion, by answer to the merits. Their answer is somewhat voluminous, consisting of denials of many of the material averments made by the relator, and of matters alleged affirmatively in justification of their action. Among these latter it is alleged that school district No. 35 never owned a site for its school building; that at the time Staudaher & Johnson notified the trustees to remove the building it had no money value apart from the doors, windows and floors, which were removed and put into the new building, except while located on its original site, and was not worth moving and rebuilding; that, upon receipt of notice from Staudaher & Johnson, the defendants negotiated with Margaret M. Koch, the clerk of the board of trustees and the wife of defendant Koch, for a place in which to have the school conducted for the ensuing year; that she thereupon began the construction of the new building at her own expense, at a point in the district near the center of population; that, upon the completion thereof, she delivered the same to the defendants to be used without expense to the district until a proper site could be secured and a suitable building could be erected; that, in order to have school in the district for the year, it was necessary to secure a building, and, to meet the urgent necessity thus brought upon them, they secured the building from Mrs. Koch, and thereupon employed a teacher to conduct school therein; that the district is not financially able to pay for the building of a schoolhouse, and for this reason no action has been taken by the defendants to secure a site therefor; and that they permitted the use of the doors, windows and floors of the old building in the new one only temporarily until a suitable site could be secured.

A trial of the issues resulted in findings in favor of the relator upon all the allegations made in the affidavit. The court further found that at a meeting of the board of trustees on September 27, 1907, by a majority vote, Lyons and Koch voting in the affirmative, it was determined to remove the school

to the location where it now is, the site selected being designated as the "new site"; that these defendants thereupon directed Mrs. Koch to advertise for bids for the erection of a new building; that, having received no bids, they made arrangements with her by which she advanced the funds required to erect the building; that thereafter defendant Koch and a brother of Mrs. Koch erected the building, taking from the old building the floor, part of the roof, the windows and doors, and incorporated them in the new building; that there had been a contention in the district during the two years prior to this action as to whether the schoolhouse should be removed to the new location, the same site selected by defendants; that it had originally been located on the old site by a vote of the district, and that the question of removal to the new site had been twice theretofore submitted to the voters (the last time in May, 1907), who had refused to consent to a removal; that, though repeatedly requested by the relator and other electors of the district, the defendants Lyons and Koch consistently refused to submit to the electors the question of removing the old schoolhouse or locating the school or building a new schoolhouse; and, by way of conclusion upon these facts, that these defendants and Margaret M. Koch, the clerk, in all their doings with reference to the new building, acted arbitrarily and without authority of law, with the purpose to remove the school to the new site without a vote of the electors. It also found that, under the arrangement made between these defendants and Mrs. Koch, she expects to be reimbursed by the district for the moneys advanced by her, provided the voters of the district authorize the trustees to purchase the new building. The judgment directed a peremptory writ to issue, commanding the trustees to submit to the electors on April 4, 1908, the question of removing the schoolhouse and school to some site, or to one of two or more sites so specifically designated in the notice of election, as well as in the ballots to be used at the election, as to enable the electors to vote intelligently thereon.

The first contention made by the appellants is that the motion to quash the alternative writ should have been sustained, because the affidavit is not sufficient in substance or form to warrant relief. Whether this is so depends upon the extent and character of the power vested in the board of trustees of a school district and the duty imposed by the statute. Section 1797 of the Political Code of 1895, as amended by Act of 1897 (Session Laws 1897, p. 130), declares: "Every school board unless otherwise specially provided by law, shall have power and it shall be its duty: * * * (6) To build or remove schoolhouses and to purchase or sell school lots. when directed by a vote of the district so to do." No other provision has been called to our attention, nor have we been able to find any, which enlarges the powers conferred by this section or modifies the duty enjoined. It must, therefore, be regarded, not only as a grant of power to such boards, but also as a limitation upon their power, both as to its extent and as to the mode of its exercise. That is the rule of construction applicable to all statutes granting and defining the powers of such municipal or *quasi* municipal bodies.

In *State ex rel. Jay* v. *Marshall,* 13 Mont. 136, 32 Pac. 648, in considering a similar provision, found in the Compiled Statutes of 1887 (Compiled Statutes 1887, Div. 5, sec. 1885), and defining its purpose and scope, this court, through the late Justice De Witt, said: "When the statute provides that the school trustees shall have power to remove 'schoolhouses' only when directed by a vote of the district so to do, we are of opinion that the term 'schoolhouse' does not mean simply the house, but refers rather to the school plant, including the general equipment, furniture, maps, charts, globes, and pupils and teacher. The rural school districts are large geographically, and small in population. The school should naturally be located to best serve the greatest number. Its location can in no way be so satisfactorily determined as by a vote of the electors of the district. Such determination is in accordance with the American principle of majority rule. We take it that it rarely, if

ever, occurs that a schoolhouse is moved.  In cities the school-
houses are elaborate structures, the moving of which is wholly
impracticable.  In the country they are rude buildings, and
are likely to be not worth the moving.  We doubt that a school-
house, as a building, was ever moved in this state.  We can
scarcely conceive of circumstances where it would be prac-
ticable to move the house.  On the other hand, changes in the
centers of population frequently occur in rapidly developing
communities.  When they occur the trustees are likely to be
elected from such new center.  The people of such new cen-
ter are likely to want the school near to them.  But the trus-
tees must not change the place of the school without the vote
of the district.  At such election all elements express themselves.
Matters of convenience to the majority, questions of expense to
the district, suitability of site, and scores of opinions and in-
fluences which sway a rural school district are sifted down
through the ballots, and the result demonstrates the will of the
people as to the site of their school.  This, in our opinion, was
within the view of the legislature, and they meant to express
their intent (section 1885, subdivision 6) that the people should
determine the site of their school.  This is a more reasonable
view than to hold that the statute means to say only that a
vote shall be had upon the question of moving the house.  The
house is the shell—the envelope.  The substance is the school
itself, and it is that in our opinion which the statute contem-
plates.''  To this admirably clear exposition it is hardly nec-
essary to add anything.  Manifestly, the theory of the legisla-
ture in this enactment was that the people who are to enjoy
the benefit of the district schools shall have the right reserved
to themselves of serving their own convenience and that of their
children in selecting the place in the district where the school
should be located, and at the same time to husband the re-
sources of the district by holding a check upon those who hap-
pened to occupy the position of trustees for the time being.
So the trustees have no power to build or remove a schoolhouse,
or the school, or to purchase or sell school lots, until they have

consulted the electors. And, while there is no express provision as to when and how an election shall be called, yet, when the exigency arises requiring the trustees to consult the electors for authority to act, they must do so. When put to the choice between acting without authority and pursuing the proper method to obtain it, they must refrain from acting until authority is obtained. The power to act without authority does not exist. When the necessity for action arises, the duty to seek authority becomes imperative. Therefore, in the absence of any other express provisions as to how they shall proceed, the provisions touching the periodical meetings for the election of trustees, or for calling special elections to obtain authority to issue bonds, and the like, furnish a safe guide. It may well be that in cases of emergency, and for temporary purposes until the electors may be consulted, the trustees might move the school. In cases of fire or pestilence, or in case of danger of an action in ejectment or damages after lawful notice to vacate premises belonging to other persons, it might well be said that they have implied power to make any temporary arrangement to accommodate the school. In such case the emergency might require immediate action. But the fact that in any such emergency immediate action may be required does not justify willful disregard of the right of the people to say what the trustees shall do with reference to the permanent location of the school and provision for its future conduct.

It cannot be claimed that the circumstances stated in the affidavit presented such an emergency as required the board to act at once. And this statement is fully borne out by the findings of the court that the notice was given by Staudaher & Johnson on September 24, 1907; that on September 27th the board held a meeting, at which the new site was selected and the clerk instructed to call for bids for the erection of a building upon it; that on October 10th another meeting of the board was held, at which, when it appeared that no bids had been received, it was agreed that the clerk should advance the necessary funds and that the building should be erected on the new

site; that defendant Koch, aided by his brother in law, then proceeded with its erection, dismantling the old building and practically removing it during the process; and that school was instituted therein on November 11th and has been continued there since, the trustees consistently refusing to consult the people, and that, too, despite the fact that within, the previous two years the question of removal to the same site had twice been submitted to the electors, the last time at the election held in May, 1907, and in both cases the answer had been in the negative. Ample time elapsed before the removal was consummated to permit the holding of an election, and in case the result had been against the proposition, to institute proceedings by condemnation of the site upon which the building then was. None of these things were done, and the conclusion seems inevitable that the defendants proceeded deliberately, in contemptuous disregard of the rights of the electors to accomplish their own personal wishes. Beyond any question the facts present a case demanding relief.

Is *mandamus* the proper remedy? In their second contention the defendants assert that it is not. In our opinion, however, it so clearly is that for authority we need refer only to the statute, which declares: "It [*mandamus*] may be issued by the supreme court or the district court, or any judge of the district, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person." (Code Civ. Proc., sec. 1961.) The relator is a party beneficially interested, and was entitled to make the application. (Code Civ. Proc., sec. 1962; *Chumasero* v. *Potts*, 2 Mont. 242.)

It is no justification of the action of the defendants for them to say that the writ will control their discretion. They have no discretion in this matter. As heretofore said, when circum-

stances require their action in the matters referred to in the statute (Political Code, sec. 1797, subd. 6), they must first get the consent of the electors. This provision is the limit of their power. Nor is it a justification of their action for them to say, as they do in their answer, that they were compelled to act as they did in order to maintain school for the current year. This is mere subterfuge. It is entirely apparent that they did not attempt to make temporary arrangements until they could secure a permanent site, but proceeded at once to select one and erect a permanent building thereon, for which they intended the district ultimately to pay. Nor is it material to this case that the district is not financially able to secure a site and erect a new building. The electors are the final arbiters of this question, as they are of the question whether the school shall be maintained at one place or another.

The judgment is affirmed at the cost of appellants.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.

