STATE EX REL. WILDIN, RESPONDENT, v. EICKOFF ET AL., APPELLANTS.

(No. 6,466.)

(Submitted April 1, 1929. Decided April 25, 1929.)

[276 Pac. 954.]

Mr. L. A. Foot, Attorney General, Mr. C. N. Davidson, Assistant Attorney General, Messrs. Baker & Robinson and Mr. J. E. McKenna, for Appellant, submitted a brief; Mr. McKenna argued the cause orally.

Mr. Ralph J. Anderson, for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an appeal from a judgment directing a peremptory writ of mandamus to issue, requiring the board of trustees of school district No. 41 of Fergus county to call an election to select a school site in compliance with a petition, signed by more than one-third of the voters who are taxpayers, residing in the district, regularly filed with the board. Upon filing the affidavit for the writ, an alternative writ of mandate was issued, and thereafter the defendants appeared by demurrer to the application, which was overruled. Subsequently, the defendants having failed to answer within the time allowed by the court, their default was regularly entered, and a peremptory writ was issued, commanding the defendants to forthwith convene as a board of school trustees, to reconsider and allow the petition, and "fix a time and place for a meeting or election of the voters of said school district to select a school site, and to issue or cause to be issued" and posted notices of election as prescribed by law.

The only question presented for decision is whether the court was in error in overruling the defendants' demurrer to the application for the writ.

So far as pertinent here, our statutes provide: "Every school board, unless otherwise specially provided by law, shall have power and it shall be its duty: * * * 8. To build or remove schoolhouses and to purchase or sell school sites: Provided, that in districts of the third class they shall not build or remove schoolhouses, nor purchase, sell, or locate school sites unless directed so to do by a majority of the electors of the district voting at an election held in the district for that purpose, and such election shall be conducted and votes canvassed in the same manner as at the annual election of school officers, and notice thereof shall be given by the clerk by posting three notices in three public places in the district at least ten days prior to such election, which notices shall specify the time, place and purpose of such election." (Sec. 1015, Rev. Codes 1921.)

"Whenever, in the judgment of the board of trustees of any school district of the third class, it is desirable to select, purchase, exchange, or sell a schoolhouse site, or whenever petitioned so to do by one-third of the voters of such district, the district board shall without delay call a meeting at some convenient time and place fixed by the board to vote upon such question of selection, purchase, exchange, or sale of schoolhouse site. Such election shall be conducted and votes canvassed in the same manner as at the annual election of school officers. Three notices giving the time, place, and purpose of such meeting shall be posted in three public places in the district by the clerk at least ten days prior to such meeting. If a majority of the electors of the district voting at such meeting or election shall be in favor of selecting, purchasing, exchanging, or selling the schoolhouse site, the board shall carry out the will of the voters thus expressed: Provided, that all sites so chosen must be approved by the county superintendent of schools and the county health officer; and also provided that

any sites so changed cannot again be changed within three years from the date of such action, except upon the advice of the county superintendent of schools and county health officer.'' (Id., sec. 1173.)

''The school should naturally be located to best serve the greatest number. Its location can in no way be so satisfactorily determined as by a vote of the electors of the district. Such determination is in accordance with the American principle of majority rule. We take it that it rarely, if ever, occurs that a schoolhouse is moved. * * * We can scarcely conceive of circumstances where it would be practicable to move the house. On the other hand, changes in the centers of population frequently occur in rapidly developing communities. When they occur, the trustees are likely to be elected from such new center. The people of such new center are likely to want the school near to them. But the trustees must not change the place of the school without the vote of the district. At such election all elements express themselves. Matters of convenience to the majority, questions of expense to the district, suitability of site, and scores of opinions and influences which sway a rural school district are sifted down through the ballots, and the result demonstrates the will of the people as to the site of their school.'' (*State ex rel. Jay* v. *Marshall,* 13 Mont. 136, 32 Pac. 648; *State ex rel. Bean* v. *Lyons,* 37 Mont. 354, 96 Pac. 922.)

Under the provisions of the statute it is the defendant's contention that the relator's application for the writ is faulty, in that it failed to show (1) that any proposed school site to be voted upon had been approved by the health officer of the county or by the county superintendent of schools; (2) that it did not appear from the petition filed with the board that it had been signed by one-third of the voters of the school district; (3) and that such petition did not indicate any definite site to be voted upon. All of these contentions are wholly without merit.

1. While it is true that the site for a schoolhouse "must be approved by the county superintendent of schools and the county health officer," yet it is plain that they have nothing whatsoever to do with the selection of a suitable site in the first instance. Upon the voters of the district the statute confers the exclusive power of "selecting, purchasing, exchanging, or selling the schoolhouse site." And such determination must be made at a meeting of the voters of the district held pursuant to required notice, at a convenient time and place whereat an election shall be "conducted and the votes canvassed in the same manner as at the annual election of school officers." It is plain that such an election may be called by the board of trustees of the district of its own initiative, and that the board is required to call a meeting for the conduct of an election on the question "whenever petitioned so to do by one-third of the voters of the district." School sites "*so chosen* must be approved by the county superintendent of schools and the county health officer"; that is, after the voters have determined upon a site for a schoolhouse, before a school building is moved thereto or a new one constructed, the site must have the approval of the two officers named. The language employed will admit of no other construction. This has reference to an accomplished event, indicative of intention that these officials are given no voice in the selection of the site in the first instance. It is the site "*so chosen,*" which they must approve. It is not contemplated that these officials shall act until the qualified voters at an election have chosen a site, after which fact the site "so chosen" must be approved by them. The word "approve" means "to sanction officially; to ratify; to confirm" (Webster's International Dictionary; *Long* v. *Needham*, 37 Mont. 408, 96 Pac. 731), and it is manifest that approval of a site as required in the statute can only be made after selection thereof has been made. Accordingly it was wholly unnecessary to affirmatively allege in the affidavit for the writ that the proposed site had been approved

by these officers as a condition precedent to calling an election of the voters of the district.

However, in the interest of economy and the proper administration of the law, it would seem advisable to obtain the approval of these officers of the proposed site or sites in advance of the election. Otherwise, the voters might select a site which could not be utilized because of the refusal of the county superintendent and health officer to approve the same. In such event much unnecessary delay and needless expense would be entailed.

2. The respondents contend that the petition filed with the ▮▮▮ board of school trustees is insufficient, as it does not appear to have been signed "by one-third of the voters of the district," as by the statute required. The law requires that the petition presented to the board shall be signed by one-third of the voters of the school district, but it does not require the petition itself to demonstrate that it is so signed. Upon presentation, the board must determine its sufficiency. However, the allegations of the affidavit on this subject, admitted by the demurrer, are to the effect that the petition presented to the board "was signed by more than one-third of the voters residing in said district." Manifestly, this objection is frivolous.

3. It is next contended that no definite school site to be ▮▮▮ voted upon was designated in the petition filed with the board. This is not required by this statute. The only provision therein with respect to the election so to be called is "that it shall be conducted and the votes canvassed in the same manner as in the annual election of school officers." This has reference to the conduct of the election, not to the contents of the petition filed with the board asking that an election be called. No specific direction is made for the nomination of schoolhouse sites to be voted upon within the district, and in consequence we must look to statutes *in pari materia* for guidance. The statute governing the annual election of school trustees furnishes a safe guide, and with propriety it may be

followed, more especially since specific reference is made thereto as regards the conduct of the election to be held for determination of the matter. Accordingly, nominations for a proposed school site to be voted upon at the election, in a district of the third class, may be made by any five qualified electors of the district, and should be received and filed by the clerk and posted at each polling place at least five days next preceding the election. The statute regulating the nomination of school trustees in districts of the third class requires "the names of all candidates for membership on the school board * * * " to "be received and filed by the clerk and posted at each polling-place at least five days next preceding the election," and "any five qualified electors of the district may file with the clerk the nominations of as many persons as are to be elected to the school board at the ensuing election." (Sec. 988, Rev. Codes 1921.) By following this procedure any five qualified electors of the district may file with the clerk of the school board the nomination of a particularly designated site within the district, to be voted upon at the election, and other voters in like manner may nominate other sites proposed, to be voted upon at the election.

As said by Mr. Chief Justice Brantly, in *State ex rel. Bean* v. *Lyons*, supra: "While there is no express provision as to when and how an election shall be called, yet, when the exigency arises requiring the trustees to consult the electors for authority to act, they must do so. When put to the choice between acting without authority and pursuing the proper method to obtain it, they must refrain from acting until authority is obtained. The power to act without authority does not exist. When the necessity for action arises, the duty to seek authority becomes imperative. Therefore, in the absence of any other express provisions as to how they shall proceed, the provisions touching the periodical meetings for the election of trustees, or for calling special elections to obtain authority to issue bonds, and the like, furnish a safe guide."

Since the election is required to be conducted in the same manner as at the annual election of school officers, the Code provisions regulating the annual election of school trustees must be followed, because, as noted, they are specifically made applicable to an election for the selection of a school site. Therefore, "in districts of the second and third classes, the election * * * shall be held and conducted under the supervision of the board of school trustees. * * * The trustees must appoint by an order entered in their records three qualified electors of said district, to act as judges at such election, and the clerk of the district shall notify them by mail of their appointment. If the judges named are not present at the time for opening the polls, the electors present may appoint judges, and the judges so appointed shall designate one of their number to act as clerk. The voting must be by ballot, without reference to the general election laws in regard to nominations, form of ballot, or manner of voting, and the polls shall be open for such length of time as the board of trustees may order; provided, that such polls must be open from 2 P. M. to 6 P. M." (Id., sec. 989.) And at every such election the provisions of sections 996, 1002 and 1003 of the Codes are made applicable with respect to the conduct of the election and canvass of the votes. Notices of the election are required to be posted at least ten days before the election (Id., sec. 1173), yet nominations may be received, filed and posted up to within five days preceding the election. (Id., sec. 988.) Thus it is manifest that it was not intended to include a description or designation for proposed school sites in the notices of election. Under this construction, it is apparent that it was never intended that a designation of a proposed site was required to be made in the petition of voters of the district directed to the board of trustees calling for an election of the district to determine upon a school site, nor is the statute susceptible of such interpretation.

Further, it is by the defendants argued that the affidavit for the writ is insufficient, in that it is not affirmatively

made to appear that the school district in question is a district of the third class. This contention is likewise without substance, for from the allegations of the affidavit it appears that three persons named therein "are the duly elected or appointed trustees of said school district and are now acting as the trustees of said district." If it were a district of the first class it would have seven trustees, and if a district of the second class five trustees. (Sec. 986, Rev. Codes 1921.) Furthermore, it is apparent from other allegations made that the district is of the third class. The application is clearly made upon that theory, for it is averred that the school trustees failed to obey the mandate of section 1173 of the Revised Codes of 1921, which relates exclusively to school districts of the third class.

Other objections raised and argued as to the sufficiency of the affidavit upon which the writ was issued, have been by us carefully considered. No useful purpose would be subserved by further extending this opinion in discussing them. Suffice it to say that we find them wholly without merit.

Upon filing the petition with the board of school trustees, it became its plain duty to call an election. It was vested with no discretion in the premises, and, in consequence of its arbitrary refusal to perform such duty imposed upon it by the statute, the peremptory writ of mandate was properly issued. Accordingly the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.