NICHOLS, Appellant, v. SCHOOL DISTRICT No. 3, RAVALLI COUNTY, et al., Respondents.

(No. 6,576.)

(Submitted February 17, 1930.  Decided March 22, 1930.)

[287 Pac. 624.]

*Mr. Harry H. Parsons* and *Mr. E. C. Kurtz,* for Appellant, submitted a brief; *Mr. Parsons* argued the cause orally.

*Mr. H. C. Packer* and *Messrs. Murphy & Whitlock*, for Respondents, submitted a brief; *Mr. M. N. Whitlock* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

On April 20, 1929, the electors of defendant, a second class school district, authorized the issuance of bonds in the sum of $120,000 for the purpose of erecting a high school building in such district. The validity of the election and bonds is not questioned. Thereafter, the trustees of the district submitted to the electors the question of whether or not the old school building should be dismantled and the new building erected at the site of the old building. A majority voted against the proposal. Subsequently, the trustees, by a majority vote, selected as a site for the proposed new building, block No. 38 of the original town site of Hamilton, which is centrally located within the district; the property was purchased, title transferred to and the purchase price paid by the defendant school district. Thereafter, plaintiff commenced this action in the district court of Ravalli county against defendants to restrain them from proceeding with the erection of a school building thereon. An order to show cause was issued and a hearing had. The court made its findings of facts and conclusions of law in favor of defendants, and denied the relief sought by plaintiff. Judgment was accordingly entered, from which plaintiff appeals.

The first question presented for determination is, Has the board of trustees of defendant school district authority to select a site for the school building without first being authorized so to do by a majority vote of the electors of the district?

Section 1014, Revised Codes of 1921, authorizes the board of trustees to call a special election for the purpose of bonding the district for the erection of buildings and the "purchase of school sites, and for permission to sell school property; provided, that in districts of the first and second classes boards of trustees shall have power to change or select school sites."

Section 1015, Id., as amended by Chapter 122, Laws of 1923, in so far as here applicable, provides: "Every school board unless otherwise specially provided by law shall have power and it shall be its duty: * * * 8. To purchase, acquire, sell and dispose of plots or parcels of land to be used as sites for school houses, school dormitories and other school buildings, and for other purposes in connection with the schools in the district; to build, purchase or otherwise acquire school houses, school dormitories and other building necessary in the operation of school of the district, and to sell and dispose of the same; provided, that they shall not build or remove school houses or dormitories, nor purchase, sell or locate school sites unless directed so to do by a majority of the electors of the district. * * * "

In the interpretation and construction of statutes the purpose and intent of the legislature must be ascertained and given effect, if possible, and in ascertaining such purpose and intent it is proper to consider the history of the legislation on the subject (*State ex rel. Bank* v. *Hays*, 86 Mont. 58, 282 Pac. 32; *State ex rel. Vickers* v. *Board of County Commissioners*, 77 Mont. 316, 250 Pac. 606; *Haydon* v. *Normandin*, 55 Mont. 539, 179 Pac. 460), and we may avail ourselves of the actual proceedings of the legislature in the enactment of laws as disclosed by the legislative records. (25 R. C. L. 1039; 2 Lewis' Sutherland on Statutory Construction, secs. 470, 471.)

The earlier Acts governing the duties and powers of school trustees are: Section 27, page 625, Codified Statutes of 1871, which provides: "Every board of trustees, unless otherwise especially provided by law, shall have power, and it shall be their duty, * * * to build or remove school-houses, and purchase or sell school lots, when the trustees may be directed by vote of the district so to do." Section 47, page 631, Id., authorizes the board to submit to the qualified electors of the district the question, "whether a tax shall be raised to furnish additional school facilities for said district, * * * or for

building one or more school-houses or for removing or building additions to one already built." These sections were re-enacted or amended by various Acts of the legislature until 1913. In each instance the trustees could act only in these particulars when authorized so to do by a majority vote of the electors of the district. In 1913 there was a general codification of the school laws (Chap. 76, Laws 1913), sections 1014 and 1015, supra, being sections 507 and 508, respectively, of that Act. Section 508 provided: "Every school board unless otherwise specially provided by law shall have power and it shall be its duty; * * * 8. To build or remove school houses, and to purchase or sell school sites, provided that *in districts of the third class* they shall not build or remove school houses, nor purchase, sell or locate school sites unless directed so to do by a majority of the electors of the district." (Italics ours.) Section 508, supra, was amended by Chapter 61 of the Laws of 1917, by providing the method for voting upon the question submitted by the trustees, and was carried forward as section 1015, Revised Codes of 1921, and was amended by Chapter 122, supra. Among other changes made in subdivision 8 was to eliminate the provision "in districts of the third class."

An examination of the records of the eighteenth legislative assembly discloses that House Bill No. 69, an Act to amend section 1015, supra, was introduced and referred to the committee on education, which recommended that the bill "do not pass"; the report was adopted and this committee then introduced substitute House Bill 69. Both bills contained the clause "in districts of the third class." Substitute House Bill 69 was passed by the House and transmitted to the Senate, where it was amended by striking out the clause above quoted. The bill, as amended, was concurred in by the House and became Chapter 122.

It is urged by plaintiff that the proviso contained in section 1014, supra, was repealed by implication by Chapter 122, supra, and that since its adoption trustees of first and second

class districts have no authority to purchase, select, or locate school sites without a vote of the electors of the district.

Repeals by implication are not favored and it is the duty of courts to reconcile conflicting statutes and, wherever possible, give effect to each. However, where the provisions are so repugnant as to be irreconcilable, or if the later Act is inconsistent with the first and clearly shows upon its face that it was the intention of the legislature in enacting it that it should be the only law on the subject, the prior statute cannot stand; the last Act controls. As was well stated by Mr. Chief Justice Callaway in *State* v. *Miller*, 69 Mont. 1, 220 Pac. 97, 99: ''While repeals by implication are not favored, when two legislative enactments relating to the same subject-matter are in conflict, and cannot be harmonized, the Act last enacted controls.'' (*In re Naegele*, 70 Mont. 129, 224 Pac. 269; *London G. & A. Co.* v. *Industrial Acc. Board*, 82 Mont. 304, 266 Pac. 1103; *Wibaux Improvement Co.* v. *Breitenfeldt*, 67 Mont. 206, 215 Pac. 222.)

In the construction of an amendatory Act it will be presumed that the legislature, in adopting it, intended to make some change in the existing law (*State ex rel. Public Service Com.* v. *Brannon*, 86 Mont. 200, 283 Pac. ·202), and the courts will endeavor to give some effect to the amendment. (*State ex rel. Bank* v. *Hays*, supra; 36 Cyc. 166.) And this presumption is fairly strong in the case of an isolated, independent amendment, as here. (*State ex rel. Rankin* v. *Wibaux County Bank of Wibaux*, 85 Mont. 532, 281 Pac. 341; 36 Cyc. 1164.) When changes have been introduced by amendment, whether by omission, addition, or substitution of words, it is not to be assumed that they are without design. (2 Lewis' Sutherland on Statutory Construction, 2d ed., 777.)

Considered in the light of the history of the law on the subject and the legislative history of Chapter 122, supra, we think it is clear that when the legislature in 1923 struck out the words ''in districts of the third class'' there was manifested an intent to change the existing law on this particular

matter, and we cannot presume that the elimination of those words was a mere idle, inadvertent and meaningless act on the part of the legislature. The conclusion seems irresistible that the legislature intended to limit the power of the trustees in first and second class districts as to the matters enumerated in subdivision 8, supra. The two provisions cannot be harmonized. It follows that the proviso of section 1014, supra, cannot stand but must give way to the later enactment.

The question is then presented whether the electors of the ▮ district select and purchase the site for the school building.

In *State ex rel. Wildin* v. *Eickoff*, 84 Mont. 539, 276 Pac. 954, we held that in districts of the third class the right to select a school site was lodged in the electors of the district. That conclusion was based largely upon the provisions of section 1173, Revised Codes of 1921, which says that "whenever, in the judgment of the board of trustees of any school district of the third class, it is desirable to select, purchase, exchange, or sell a schoolhouse site, or whenever petitioned so to do by one-third of the voters of such district," the board shall call an election for that purpose.

Manifestly, these provisions can have no application to districts of the first and second class and the only method provided for in such districts is found in subdivision 8, supra. We think it is clear that the legislature did not intend that in such districts the selection and purchase of sites should be left to the electors, since the provisions of subdivision 8, supra, merely say that the trustees, before doing any of the things enumerated, shall be "directed so to do" by the electors of the district. Had the legislature intended otherwise, the provisions of section 1173, supra, would have been made applicable to all school districts.

At the bond election held in defendant district the only ▮ question submitted to the electors was whether bonds in the sum of $120,000 should be issued for the purpose of erecting a high-school building in the district, although the right to acquire a site might properly have been submitted

as a part of the same proposition (subd. (a), sec. 1, Chap. 147, Laws 1927), and having failed to do so it cannot be said that the authorization to issue bonds for the only purpose submitted by the question, carried with it the implied authority to purchase and locate a site for the building.

It is argued by defendants that since it appears that plaintiff did not pursue the remedy afforded by section 966, Revised Codes 1921, which provides that all matters in controversy arising in the administration of the school laws shall be decided by the county superintendent from whose decision an appeal may be taken to the state superintendent whose decision is final, "subject to adjudication or the proper legal remedies in the state courts," he is not entitled to injunctive relief. We are of the opinion that the section has no application here. Manifestly, this section can have no application to cases where the board attempts to act without or in excess of jurisdiction, as in the case before us.

Finally, it is contended by defendants that injunction is not the proper remedy. With this contention we cannot agree. We are of the opinion that injunction is a proper remedy. (*School District* v. *Richards*, 62 Mont. 141, 205 Pac. 206; *Milligan* v. *Miles City*, 51 Mont. 374, L. R. A. 1916C, 395, 153 Pac. 276; 35 Cyc. 939; 32 C. J. 251.)

While it is possible that the law as it is written may in cases result in confusion and prove wholly unsatisfactory and unworkable, yet the legislature had the power to act as it did, and having acted, we must accept the law as we find it. "Our duty is not to enact, but to expound the law; not to legislate, but to construe legislation, to apply the law as we find it, and to maintain its integrity as it has been written by a co-ordinate branch of the state government." (*Cooke* v. *Holland Furnace Co.*, 200 Mich. 192, L. R. A. 1918E, 552, 166 N. W. 1013, 1014; *Chmielewska* v. *Butte & Superior Min. Co.*, 81 Mont. 36, 261 Pac. 616; *State ex rel. Bank* v. *Hays*, supra.)

The injunction should have been granted. Accordingly, the judgment is reversed.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MATTHEWS concur.

MR. JUSTICE GALEN: I dissent. It is our duty, if possible, to harmonize the legislation on the subject. By Chapter 122 of the Laws of 1923, section 1014 of the Revised Codes of 1921 is not expressly repealed, and, in my opinion, there is not a repeal thereof by necessary implication, otherwise or at all. And repeals by implication are never favored. (*State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362; *State ex rel. Metcalf* v. *Wileman,* 49 Mont. 436, 143 Pac. 565.) If the separate enactments can by any reasonable construction be construed together, both should be upheld. (*State ex rel. Metcalf* v. *Wileman,* supra.) In my opinion, the enactments are not repugnant and may be easily harmonized. Such being the case, the judgment should be affirmed.

The authority under which the board acted in selecting the site for the new building is contained in section 1014 of the Revised Codes of 1921, which reads as follows: "The board of trustees shall have power to call a special election for the purpose of bonding the district for the erection and furnishing buildings and purchase of school sites, and for permission to sell school property; *provided, that in districts of the first and second classes boards of trustees shall have power to change or select school sites.*"

Before amendment, there can be no question but what the provisions of section 1015 were in complete accord. So far as here applicable, it read: "Every school board unless otherwise specially provided by law shall have power and it shall be its duty: * * * 8. To build or remove schoolhouses and to purchase or sell school sites; provided, that in districts of the third class they shall not build or remove schoolhouses, nor purchase, sell, or locate school sites unless directed so to do by a majority of the electors of the district voting at an election held in the district for that purpose, and such election shall be conducted and votes canvassed in the same manner as at the annual election of school officers, and notice thereof shall

be given by the clerk by posting three notices in three public places in the district at least ten days prior to such election, which notices shall specify the time, place and purpose of such election.''

Thus, districts of the third class were specially excepted from the provisions of section 1014, and, as to them, the question of the location of school buildings is required to be submitted to a vote of the electors. (*State ex rel. Wildin* v. *Eickoff*, 84 Mont. 539, 276 Pac. 954.)

Subdivision 8 of section 1015, as amended by Chapter 122 of the Laws of 1923, does not affect the provisions of section 1014, either specially or by implication, and its effect is to leave the statutes as they existed previously—applicable only to third class school districts.

Upon amendment of section 1015, although the language employed in subdivision 8 is changed so as to make it general in application, that is, leaving out express exception of third class school districts, yet, as amended, it remains wholly consistent with section 1014; therefore, by other special statutory law existing (sec. 1014), unaffected by the amendment in Chapter 122, Laws of 1923, in districts of the first and second class, the trustees are empowered to change or select school sites.

Chapter 147 of the Laws of 1927 makes provision only for obtaining the necessary money on the issuance of bonds on the credit of the school district, among other purposes: ''(a) For the purpose of building, enlarging, altering, repairing, or acquiring by purchase one or more schoolhouses in said district; furnishing and equipping the same, and purchasing the necessary lands therefor.''

The bonds having been regularly authorized by vote of the electors for the purpose of erecting a high school building, and the district having obtained the money on sale of the bonds, it being a district of the second class, there was no necessity under the law to specially submit the question of the location of the school building to the electors of the district, because other special provision applicable is made by section 1014. In

my opinion, the board is given exclusive power ''to change or select school sites in districts of the first and second class,'' which remains entirely unaffected by the enactment of Chapter 122 of the Laws of 1923.

MR. JUSTICE ANGSTMAN: I dissent. I agree that subdivision 8 of section 1015, as amended by Chapter 122, Laws of 1923, repeals section 1014 of the Revised Codes of 1921 by implication, but it is my opinion that the authority of the board of trustees to issue bonds for the purpose of erecting a school building conferred by vote of the electors carries with it the implied power to locate and purchase a site, particularly where, as here, the electors voted against the dismantling of the building on the present site, and the erection of the new building thereon.

Chapter 147, Laws of 1927, does not contemplate that the electors may vote on the question of purchasing a site separately from the question of authorizing a bond issue for building a schoolhouse.

Rehearing denied May 21, 1930.